UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KRISTOPHER EMBRY** | * | **CIVIL ACTION NO.:** |
| *Plaintiff* | * | |
| | * | |
| **VERSUS** | * | **SECTION:** |
| | * | |
| | * | |
| **PIPELINE INSPECTION AND** | * | |
| **CONDITION ANALYSIS (USA) CORP.** | * | |
| **& RUSSELL NDE SYSTEMS, INC.** | * | **DIVISION:** |
| *Defendants* | * | |
| | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT WITH JURY DEMAND

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Kristopher Embry, who files this Complaint and respectfully represents as follows:

### INTRODUCTION

From 2019 to 2024, Mr. Embry, was employed by Pipeline Inspection and Condition Analysis (USA) Corp. ("PICA") and Russell NDE Systems, Inc. ("NDE Systems" or "Russell NDE") in both Regional Manager and Vice President positions. Mr. Embry was a salaried employee who also received commissions payments, which were structured differently for each position he held at PICA. Upon his resignation on July 8, 2024, PICA failed to fully compensate Mr. Embry for outstanding commissions owed to him on several projects, accrued vacation, and expenses in excess of $150,000.00. Mr. Embry made formal demand on PICA to pay the sums owed to him as he relied on commissions as his source of income. Mr. Embry now asserts claims against PICA, and its parent corporation, Russell NDE Systems, Inc. for violations of and claims arising under the Louisiana Wage Payment Act ("LWPA").

1

## JURISDICTION AND VENUE

1.

This Court has diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332 as Mr. Embry, PICA, and NDE Systems are citizens of different states, specifically, Louisiana, Colorado (PICA) and Alberta, Canada (NDE Systems) respectively, and the amount in controversy exceeds $75,000.00.

2.

Venue is proper in the United States District Court for the Eastern District of Louisiana as Mr. Embry was employed in Orleans Parish and a substantial part of the actions giving rise to the claims arose from Mr. Embry's employment in Orleans Parish.

## THE PARTIES

3.

Plaintiff, Mr. Embry, is an adult citizen and resident of New Orleans, Louisiana.

4.

Defendant, PICA, is a foreign corporation that provides pipeline assessment services. PICA is domiciled and incorporated in Colorado.

5.

Defendant Russell NDE, is a foreign corporation domiciled and incorporated in the City of Edmonton, Alberta, Canada.

## FACTS

6.

Mr. Embry is an experienced businessperson who has been in contracting and sales for his entire career. He has spent sixteen years specifically in the water and wastewater pipeline industry.

2

7.

On or about May 27, 2019, PICA President, David E. Russell, hired Mr. Embry as a Regional Manager for PICA and Russell NDE.

8.

On or about June 1, 2019, Mr. Embry began his employment with PICA.

9.

Mr. Embry was hired as Regional Manager and given a salary plus commission as all sales staff was entitled to.

10.

According to the PICA handbook, which terms and conditions are incorporated herein, Mr. Embry's total employment rewards package included: (1) base pay, (2) incentive pay and bonuses, (3) commission for sales staff, (4) vacation, (5) holidays, (6) personal days, (7) unpaid leaves of absence, (8) medical and dental coverage, (9) vision care, (10) group life insurance, (11) accidental death and dismemberment, (12) long term disability coverage, (13) group RRSPs, (14) Service awards, (15) learning and development programs, and (16) tuition reimbursement.

11.

As a Regional Manager, Mr. Embry was responsible for sales and contract procurement for PICA, including the Southeastern United States region. His job duties included, but were not limited to, facilitating pipeline inspections, procuring and maintaining client contracts, familiarizing clients with inspection techniques and budgets, and writing proposals. In his sales position, Mr. Embry's sales role would conclude at the time the client executed the contract. After the contract was executed, the client would then be assigned a Project Manager. Project Managers were not paid commission.

12.

During his early employment, Mr. Embry earned an annual salary and 2.3% commission on all contracts (invoiced) exceeding $450,000.00. Mr. Embry also had two (2) weeks of paid vacation for his first one (1) to five (5) years at PICA.

13.

In June 2022, due to his high achievement and performance as Regional Manager, Mr. Embry accepted a position as Vice President of Business Development. As VP of Business Development, his annual salary increased, and he was entitled to a 3% commission on all contracts he individually sold exceeding $450,000.00.

14.

Because Mr. Embry continued to excel at PICA, in December 2023, his manager, Evan West lobbied for PICA to increase Mr. Embry's salary and to remove the $450,000.00 threshold required for commission payments.

15.

As of January 4, 2024, Mr. Embry earned a salary plus 3% commission on *all* sales – regardless of the price.

16.

Additionally, because he was employed at PICA for over five (5) years, in 2024, Mr. Embry now received three (3) weeks of paid vacation.

17.

On July 8, 2024, due to a change in management of PICA, Mr. Embry resigned from his position at PICA. PICA made the business decision to hire Evan West as Managing Director.

18.

18.

At the time he resigned, Mr. Embry was/is owed commission on approximately twenty-two (22) contracts he closed during his employment with PICA. The total outstanding commissions exceeded $150,000.00 and is estimated to be approximately $250,000.00 once paid.

19.

Additionally, upon his resignation, Mr. Embry had accrued nineteen (19) unused vacation days, fifteen (15) of which were allotted and unused for 2024, and four (4) of which rolled over from 2023.

20.

On July 17, 2024, Mr. Embry contacted PICA, through its Managing Director, Evan Russell, and requested payment of the commissions he earned to date and for his unused accrued vacation days.

21.

In a letter dated July 19, 2024, Mr. Russell represented to Mr. Embry that he was "only eligible to receive commissions based on contracted jobs for which work was in progress and for which the customer was being billed."

22.

Mr. Russell stated PICA would pay Mr. Embry a total of $34,935.34 "in recognition of [his] service to the company."

23.

Mr. Embry attempted to go through PICA's owner, Dave Russell, to collect his unpaid wages, and to ensure future payment, but Mr. Russel re-directed Mr. Embry to Mr. West.

24.

On July 31, 2024, Mr. Embry received a final payment from PICA in the amount of $3,035.68 for commissions and $4,449.04 for thirteen (13) of his nineteen (19) unused vacation days – a fraction of what he had earned.

25.

There is no written commission policy at PICA. Historically, throughout his employment at PICA, Mr. Embry received commissions on all contracts he closed/sold. If Mr. Embry closed a sale, and a contract was executed, his commission was earned, and he would be paid when the client paid.

26.

At no point did the Company inform Mr. Embry that he would only be entitled to commissions earned if he was employed at the Company. The commission was earned at the time of the sale. Louisiana law provides that an employee is entitled to be paid all commissions earned – regardless of whether he is still employed at the time the commission is due to be paid.

27.

Several of Mr. Embry's contracts took several months if not years to close. It was reasonable for Mr. Embry to expect to be paid on these contracts whether he was employed or not.

28.

Furthermore, Mr. Embry expected/expects to receive commissions on his closed contracts following his resignation based on precedent established by PICA in previous instances as well as applicable Louisiana law. Upon information and belief, sales commissions were honored regardless of whether the salesperson who procured the project remained at PICA at the time the contract was paid.

29.

On August 2, 2024, Mr. Embry communicated with PICA through Mr. West, advising that PICA still had not paid him for commissions and unused vacation days.

30.

On September 27, 2024, counsel for Mr. Embry made a formal demand for payment.

31.

After Mr. Embry spent thousands of dollars in attorney fees, PICA tendered some of the wages and the unpaid vacation but owes $150,000.00 to $215,000.00 to date.

32.

In January 2025, Mr. Embry submitted all expenses for the 2024 calendar year. While PICA has represented its intent to refund Mr. Embry for expenses, to date, PICA has not paid these monies owed. Mr. Embry is entitled to expense reimbursement and fees associated with collection.

## COUNT ONE
### Louisiana Wage Payment Act
### La. R.S. § 23:631

33.

Louisiana law, specifically the Louisiana Wage Payment Act ("LWPA"), provides that "[u]pon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whatever occurs first."[1]

34.

---

[1] La. R.S. § 23:631(A)(1)(b).

The statute further states that "compensation available in the form of commission, incentive pay, or bonus shall be considered an amount then due only if, at the time of separation, the compensation has been earned and not modified in accordance with a written policy addressing the commission, incentive pay, or bonus."[2]

35.

In accordance with the LWPA, at the time of separation, specifically, upon Mr. Embry's resignation, PICA had/has the duty to pay Mr. Embry for all commissions earned and for accrued vacation.

36.

Since January 2024, the terms of Mr. Embry's employment provided he would be compensated 3% of all sales he closed. Payment would be made at the time of the payment of the invoice. The terms of Mr. Embry's employment did not forfeit the commissions he earned if he were to resign and Mr. Embry is entitled to collect on these sales to date.

37.

At no time during his employment did PICA furnish Mr. Embry with a written or oral modification regarding his commission pay structure.

38.

As of the date of his resignation, commissions on twenty-two (22) contracts closed by Mr. Embry remained unpaid as well as accrued vacation days.

39.

PICA should be paying Mr. Embry each time it invoices a Client that resulted from his sale as he earned the commissions at the time of the sale.

---

[2] La. R.S. § 23:631(E)(1).

8

40.

PICA has since paid Mr. Embry a nominal amount and failed to satisfy the due total owed to him in excess of $150,000.00.

41.

Mr. Embry seeks and is entitled to payment of the unpaid commissions and unused vacation days.

42.

Mr. Embry seeks and is entitled to payment of future commissions associated with his sales.

43.

Additionally, except when failure to pay wages is in good faith, "any employer who fails or refuses to comply with the provisions of R.S. § 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages."[3]

44.

PICA failed to act in good faith, as upon his resignation, Mr. Embry immediately demanded payment of the unpaid commission and unused vacation days.

45.

While PICA has since paid vacation days and some of the commissions, Mr. Embry spent thousands of dollars on legal fees and costs to retrieve these monies. As such, Mr. Embry seeks attorney's fees and penalty wages for the amount already tendered.

46.

---

[3] La. R.S. § 23:632(A).

Pursuant to La. R.S. § 23:632(A) Mr. Embry seeks and is entitled to penalty wages in the amount of ninety (90) days' wages at his daily rate or full wages from the time of his demand to the date the payment is made, whichever is lesser. Ms. Embry seeks penalty fees on both the paid and unpaid commissions and vacation days.

47.

Mr. Embry further requests that this Honorable Court award him reasonable attorneys' fees[4] and costs. Specifically, Mr. Embry is entitled to attorney fees for the amount of fees he paid to collect the fraction of wages tendered by PICA to date, and for attorney fees associated with filing the instant litigation.

## DAMAGES

48.

As a result of Defendants' actions, Plaintiff, Mr. Embry, suffered extensive damages including, but not limited to:

A. A declaratory judgment ordering PICA to pay Mr. Embry commission for all of his sales/earned commissions;

B. Unpaid Wages;

C. Emotional Distress;

D. Penalty Wages;

E. Attorneys' Fees;

F. All other reasonable fees and costs to which Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

49.

---

[4] La. R.S. § 23:632(C).

Plaintiff, Mr. Embry, respectfully requests that this matter proceed before a trial by jury.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, Kristopher Embry, requests that this Honorable Court enter a judgment in his favor and against Defendants, PICA and NDE Systems, and award Plaintiff declaratory relief and damages including but not limited to those under the Louisiana Wage Payment Act, attorney's fees and costs, and all other relief which this Honorable Court deems just and equitable.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

RESPECTFULLY SUBMITTED,

STERNBERG, NACCARI & WHITE, LLC

*/s/ Chelsea B. Cusimano*

---

**M. SUZANNE MONTERO**, La. Bar No. 21361
**CHELSEA B. CUSIMANO**, La. Bar No. 34857
**HALEY A. JUPITER**, La. Bar No. 40416
935 Gravier Street, Suite 1800
Telephone: 504.324.2141
Facsimile:  504.534.8961
suzy@snw.law | cbc@snw.law | haley@snw.law

*Counsel for Plaintiff*

**A WAIVER OF SERVICE WILL BE SIGNED BY COUNSEL OF RECORD**